142 F.3d 440
 12 NDLR P 97
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Robert W. TUSZKIEWICZ, Plaintiff-Appellant,
v.
ALLEN-BRADLEY COMPANY, INC. Defendant-Appellee.
 No. 97-2881.
 United States Court of Appeals,
Seventh Circuit.
 .
Argued Feb. 24, 1998.
Decided Mar. 17, 1998.
 
 Appeal from the United States District Court for the Eastern District of Wisconsin. No. 96 C 110 Myron L. Gordon, Judge.
 Before Honorable JOHN L. COFFEY, Honorable DANIEL A. MANION, Honorable ILANA DIAMOND ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Robert Tuszkiewicz filed suit against his former employer, Allen-Bradley Company, Inc., contending that he was discharged in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. The district court granted Allen-Bradley's motion for summary judgment, and Tuszkiewicz appeals. Tuszkiewicz v. Allen-Bradley Co., 967 F.Supp. 1119 (E.D.Wis.1997). Because we find that the central argument Tuszkiewicz makes on appeal was not one that he raised below, we deemed it waived and consequently affirm the judgment.
 
 I.
 
 2
 A blockage between the third and fourth ventricles of Tuszkiewicz's brain (aqueductal stenosis), causes him to suffer from a condition known as hydrocephalus, a buildup of pressure from cerebral spinal fluid. A shunt was surgically inserted into Tuszkiewicz's brain in 1963 to regulate the flow of spinal fluid. In or around April of 1994, however, the shunt began to malfunction, causing Tuszkiewicz to experience memory loss, headaches, vomiting, and other symptoms of hydrocephalus. These symptoms interfered with his work as Supervisor of Custom Publications at Allen-Bradley, and ultimately Tuszkiewicz took an extended medical leave. During that time he underwent three separate surgical procedures to replace the malfunctioning shunt and resolve the hydrocephalus. These were successful enough to permit Tuszkiewicz to return to work on a trial basis on November 7, 1995.
 
 
 3
 When Tuszkiewicz reported for work on that date, however, he was discharged. Soon after he had begun his medical leave, the company discovered that from September 1993 through January 1994, Tuszkiewicz had ordered and accepted at no cost to himself a number of premiums from Allen-Bradley vendors, including three portable televisions and three portable AM/FM cassette stereos. The company deemed Tuszkiewicz's acceptance of these premiums to be a violation of its ethics policy, which purportedly prohibits employees from accepting anything of more than nominal value from its vendors.[1] The decision was made in December 1994 to discharge Tuszkiewicz, unless upon his return to work he could refute any of the documentation the company had assembled evidencing his acceptance of the premiums. (The company did not confront Tuszkiewicz with the ethics charge immediately because it was company policy not to discharge an employee while he was on medical leave.) When Tuszkiewicz reported for work on November 7, 1995, he was accordingly asked about the premiums. Tuszkiewicz indicated that he did not remember taking the premiums and that he was having difficulty with his memory in general; he acknowledged, however, the possibility that he may have accepted the premiums. The company informed him that he was terminated. One of the company officials who participated in the termination meeting subsequently noted that Tuszkiewicz had told them during the meeting that he was having memory problems.
 
 
 4
 After receiving his right-to-sue letter from the EEOC, Tuszkiewicz filed suit claiming that the company had violated the ADA in two distinct ways: first, by terminating him because he was disabled (the "discriminatory discharge claim"), and second, by failing to make accommodations to his disability-related limitations that would have permitted him to return to work (the "accommodation claim"). The district court granted summary judgment in favor of Allen-Bradley on the discriminatory discharge claim for want of evidence that Tuszkiewicz was a "qualified" individual with a disability--that is, that he was able to perform the duties of his job with or without reasonable accommodation. 967 F.Supp. at 1129-30; see, e.g., Duda v. Board of Educ. of Franklin Park Pub. Sch. Dist. No. 84, 133 F.3d 1054, 1058-59 (7th Cir.1998); McCreary v. Libby-Owens Ford Co., 132 F.3d 1159, 1164 (7th Cir.1997). As to the accommodation claim, the court concluded that Allen-Bradley was not under a duty to accommodate Tuszkiewicz when he reported for work on November 7, 1995[2] because the record indicated that the company was not aware of any disability that Tuszkiewicz had as of that date. 967 F.Supp. at 1130-31. His physician had written a letter to Allen-Bradley releasing Tuszkiewicz for work "without restrictions"; and although Tuszkiewicz maintained that he was in fact prepared to return to work only part-time and on a trial basis, the court found the evidence of record insufficient to establish that Tuszkiewicz had communicated any limitations to the company so as to have placed it on notice of the need to accommodate him. Id. at 1131. Alternatively, the court reasoned that the company bore no duty to accommodate an employee that it had already determined to be in violation of its ethics policies and thus subject to discharge. Id . at 1131-32.
 
 II.
 
 5
 Tuszkiewicz's appeal focuses on the portion of the district court's ruling dealing with his accommodation claim. He has not challenged the district court's decision to grant summary judgment in favor of Allen-Bradley on the discriminatory discharge claim. The accommodation claim faces a threshold obstacle in the alternative rationale that the district court cited in granting summary judgment on this claim--if, as Allen-Bradley argues, it had a legitimate reason for discharging Tuszkiewicz unrelated to his disability, then the duty to accommodate Tuszkiewicz vis a vis his work responsibilities is entirely beside the point. See Siefken v. Village of Arlington Heights, 65 F.3d 664, 666 (7th Cir.1995); Despears v. Milwaukee County, 63 F.3d 635, 637 (7th Cir.1995). To surmount that obstacle, Tuszkiewicz argues that the company failed to accommodate him in the disciplinary process that culminated in his discharge. Tuszkiewicz notes that rather than firing him immediately based on the information it had assembled during his leave from the company, Allen-Bradley instead confronted him with the ethics charge upon his return to work and solicited his response. Presumably, had he recalled the circumstances under which he had accepted the premiums and been able to respond effectively to the company's concerns, his superiors might have reconsidered their initial resolve to terminate him. But, when Tuszkiewicz was unable to recall his acceptance of the premiums, the company fired him. It is in the summary nature of the discharge meeting that Tuszkiewicz contends the company failed to accommodate him. A central effect of Tuszkiewicz's hydrocephalus was memory loss, Tuszkiewicz reminds us, and a continuing failure of memory was what made it impossible for him to respond to the unexpected allegations of an ethics breach confronting him on the date of his return. The company knew that hydrocephalus had caused him to suffer memory loss in the past, and he argues that it must have realized he was still experiencing memory-related difficulties when he reported for work on November 7, 1995, if only because he so stated during the discharge meeting itself. Allen-Bradley consequently bore a duty to accommodate that memory loss before it finalized the decision to terminate him. Had it done so, Tuszkiewicz theorizes, he would have been able to recall and communicate the fact that the premiums in question had been donated to charity consistent with his past donations of premiums, and the company would not have fired him.
 
 
 6
 We shall assume without deciding that an employer indeed does bear a duty under the ADA to make reasonable accommodations to the known disabilities of its employee in the disciplinary process, as Tuszkiewicz's arguments presume. Cf. Randolph v. Rodgers, 980 F.Supp. 1051, 1062 (E.D.Mo.1997) (prison violated ADA by failing to provide hearing-impaired prisoner with sign language interpreter during disciplinary and classification proceedings). There is a question as to whether Tuszkiewicz sufficiently alerted Allen-Bradley to any hydrocephalus-related limitations (such as memory loss) that lingered upon his return to work on November 7, 1995 so as to trigger a duty on the company's part to accommodate such limitations. See Hunt-Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago, 104 F.3d 1004, 1012 (7th Cir.1997). There is also a question pending as to whether or not Tuszkiewicz may properly raise a failure to accommodate claim in this litigation because he did not specifically cite a failure to accommodate in his EEOC charge. Cf. Chambers v. Wildman, Harrold, Allen & Dixon, No. 97 C 5715, 1997 WL 666507, at * 3-* 4 (N.D.Ill. Oct. 23) (accommodation claim foreclosed by failure to raise it in EEOC charge that focused on termination claims). We need not resolve these questions, as we conclude that for two reasons, Tuszkiewicz has waived the particular accommodation argument that he attempts to make on appeal.
 
 
 7
 First, Tuszkiewicz never argued below in the summary judgment briefing that Allen-Bradley breached a duty to accommodate him when it confronted him with the ethics charge and terminated him on the basis of that charge. His memorandum in opposition to the summary judgment made passing reference, in the factual section, to the company's failure to accommodate him in the discharge process. R. 98 at 11 ("No steps were taken to assess or to accommodate Tuszkiewicz's handicap before or during the discharge meeting."). However, nowhere in the argument section of his memorandum did Tuszkiewicz articulate the theory that the company owed him a duty of accommodation in confronting him with the ethics charge and that it breached that duty. Instead, the accommodation argument that Tuszkiewicz made was one focused on the day-to-day responsibilities of his position and the company's obligation to assess his capabilities and make reasonable adjustments that would have permitted him to fulfill the essential functions of the job upon his return to work. R. 98 at 28-29. That is plainly how both Allen-Bradley and the district court understood his argument. Thus, the company repeatedly argued (R. 46 at 1-2, 31-32; R. 108 at 2, 27), and the district court essentially agreed (967 F.Supp. at 1131-32), that any effort to accommodate Tuszkiewicz vis a vis his work responsibilities would have been futile in view of the company's conclusion that Tuszkiewicz should be discharged for violating the company's ethics policy. The company's logic invited the argument that Tuszkiewicz makes on appeal--that the discharge decision was itself tainted by the failure to accommodate his known disabilities--but Tuszkiewicz simply did not make that argument in opposing summary judgment. His failure to do so amounts to a waiver of this argument. E.g., Hightshue v. AIG Life Ins. Co., No. 96-3646, 1998 WL 40280, at * 5 (7th Cir. Feb. 4); Oates v. Discovery Zone, 116 F.3d 1161, 1168-69 (7th Cir.1997); McKinney v. Indiana Michigan Power Co., 113 F.3d 770, 773-74 (7th Cir.1997).[3]
 
 
 8
 Second, the accommodation argument that Tuszkiewicz makes on appeal presumes that Allen-Bradley's decision to fire him was not yet final when Tuszkiewicz reported for work on November 7, 1995 and that, had he been accommodated within the context of the discharge meeting (had he been given more time to respond to the allegations concerning the premiums, for example), he would have been able to satisfy the company's concerns and avoid discharge. The trouble with this premise is that it runs directly counter to the position that Tuszkiewicz took below. Allen-Bradley itself posited, as Tuszkiewicz has reminded us, that although the company had resolved to fire him in December 1994, it also held open the possibility that it might not go through with termination if Tuszkiewicz was able to dispel the information it had assembled regarding his apparent acceptance of the premiums. E.g., R. 46 at 6, 7; R. 47 at 17 p 63. Tuszkiewicz himself disputed that assertion, however (R. 100 at 11 p 63) and instead averred that the decision to discharge him was made final in December 1994, eleven months prior to the discharge meeting (R. 99 at 11 p 93; see also id. at 6 pp 42-44). Indeed, Tuszkiewicz unequivocally asserted that "[t]here was nothing [he] could have said during the discharge meeting to change Allen-Bradley's decision." R. 99 at 11 p 94. In response, Allen-Bradley conceded for purposes of the motion for summary judgment that the decision to discharge Tuszkiewicz was finalized in December 1994, although it took issue with Tuszkiewicz's allegation that nothing he could have said at the discharge meeting in November 1995 would have changed that decision. R. 109 at 26, pp 93, 94; see also R. 108 at 6, 7. In any event, Tuszkiewicz's contention that the discharge decision had already been made final eleven months prior to the discharge meeting, coupled with his own assertion that he could have said nothing at the discharge meeting that would have altered the company's decision, foreclosed the argument that he attempts to make now. See Counts v. American Gen. Life & Accident Ins. Co., 111 F.3d 105, 108 (11th Cir.1997) (" '[a]n appellate court generally will not consider an issue raised for the first time on appeal ... [, especially] where the appellant pursued a contrary position before the district court" '), quoting United States v. One Lear Jet Aircraft, 808 F.2d 765, 773-74 (11th Cir.), vacated on other grounds, 831 F.2d 221 (11th Cir.1987), on reh'g en banc, 836 F.2d 1571 (11th Cir.), cert. denied, 487 U.S. 1204, 108 S.Ct. 2844 (1988).
 
 III.
 
 9
 Because the accommodation argument that Tuszkiewicz makes on appeal was waived, we AFFIRM the judgment below.
 
 
 
 [1]
 It later turned out that Tuszkiewicz had donated the items to charity; but Allen-Bradley takes the position that Tuszkiewicz's acceptance of the premiums nonetheless constituted an ethics violation in view of his failure to obtain company approval before he ordered the premiums and donated them to charity
 
 
 [2]
 Tuszkiewicz had also argued that the company had failed to accommodate him on two earlier occasions. The district court found summary judgment appropriate as to those occasions for the same reason that it had granted summary judgment on the discriminatory discharge claim--lack of evidence that Tuszkiewicz was able to work and thus "qualified" for purposes of the ADA. 967 F.Supp. at 1130. That portion of the district court's ruling is not at issue in this appeal. Tuszkiewicz's accommodation argument here is focused solely on November 7, 1995, the date he sought to return to work
 
 
 [3]
 Tuszkiewicz argued below that the ethics charge was pretextual and thus did not relieve the company of the duty to accommodate him in his work responsibilities. R. 98 at 29. He takes up the same refrain on appeal. E.g., Tuszkiewicz Opening Brief at 42-47. However, the pretext argument is one properly made in support of the discriminatory discharge claim, a claim that Tuszkiewicz has abandoned on appeal